FILED

2015 Aug-21  AM 08:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **RODNEY SAXON o/b/o GLINDA SAXON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 1:14-CV-782-VEH** |
| ) | |
| **CAROLYN W. COLVIN, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

---

## MEMORANDUM OPINION

### I.   INTRODUCTION

Rodney Saxon ("Mr. Saxon") brings this action on behalf[1] of his wife, Glinda Saxon ("Mrs. Saxon"), under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied Mrs. Saxon's application for disability and disability insurance benefits ("DIB"). Mrs. Saxon timely pursued and exhausted her administrative remedies available before the

---

[1] Rodney Saxon is attorney-in-fact for Glinda Saxon pursuant to a Durable and General Power of Attorney. Tr. 22; (*see* Doc. 8 at 1, describing location of the power of attorney).

Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[2] The court

has carefully considered the record and, for the reasons which follow, finds that the

decision of the Commissioner is due to be **AFFIRMED**.

## II.    FACTUAL AND PROCEDURAL HISTORY

Mrs. Saxon was 56 years old on her date last insured, June 30, 2006. (Tr. 35,

45,49). She attended four years of college and previously worked as a teacher. (Tr.

53). She alleged disability beginning on May 1, 2001,[3] because of early-onset

Alzheimer's disease and post-polio syndrome. (Tr. 52, 59).

Mrs. Saxon filed an application for a period of disability and DIB on July 14,

2010. (Tr. 35, 45, 59). The Social Security Administration denied the application on

October 25, 2010. (Tr. 36-42). She requested a hearing before an administrative law

judge ("ALJ"), which was held on May 22, 2012. (Tr. 176). The ALJ issued a decision

on October 22, 2012, denying her application. (Tr. 19-67). The Appeals Council

("AC") denied Saxon's request for review on March 14, 2014. (Tr. 4-7).

Mrs. Saxon filed a complaint with this court on April 25, 2014, seeking review

of the Commissioner's determination. (Doc. 1). The Commissioner answered on

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g)
fully applicable to claims for SSI.

[3] In her original application, Mrs. Saxon alleged that she became disabled on May 30,
1992. (Tr. 45). She later amended her onset date to May 1, 2001. (Tr. 59).

August 5, 2014. (Doc.5). Mrs. Saxon filed a supporting brief on August 20, 2014. (Doc. 8). The Commissioner responded with her own brief on October 21, 2014. (Doc. 9).

## III.   STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has

been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

## V.   ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1.     The claimant last met the insured status requirements of the Social Security Act on June 30, 2006.

2.     The claimant did not engage in substantial gainful activity during the period from her onset date of May 1, 2001 through her date last insured of June 30, 2006.

3.      Through the date last insured, the claimant had the following medically determinable impairment: post polio syndrome.

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments.

5.      The claimant was not under a disability, as defined in the Social Security Act, at any time from May 1, 2001, the alleged onset date, through June 30, 2006, the date last insured.

(Tr. 24-27).

## VI.   ANALYSIS

The court may reverse a finding of the Commissioner only if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

The ALJ found that the only impairment that Mrs. Saxon had during the period

---

[4] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

of alleged disability was postpolio syndrome. Mrs. Saxon asserts that she also had dementia and/or Alzheimer's Disease during that period, and that she was therefore totally disabled. (Tr. 41, 52, 59)

Mrs. Saxon makes three specific arguments in favor of reversing the ALJ's decision. (Doc. 8 at 2). First, she argues that the ALJ violated his duty to fully and fairly develop the record. Second, she states that the ALJ erred by failing to recognize the significance of a CT scan. Third, Mrs. Saxon contends that the AC improperly denied review of her appeal after she submitted opinions from her treating physician, Dr. Beale.

### A.    The ALJ Did Not Fail To Develop The Record

Mrs. Saxon contends that the ALJ failed to fully and fairly develop the record. (Doc. 8 at 9-16). The Supreme Court has stated, "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S. Ct. 2080, 2085 (2000). This includes "a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Mrs. Saxon argues that the ALJ owed a special duty to her as an unrepresented claimant, since she was unrepresented during her application for benefits and the hearing. (Doc. 8 at 10). However, this misstates the Eleventh Circuit rule, which says that the ALJ owes "a special duty" to develop the record when the claimant is

unrepresented <u>and</u> "the right to representation has not been waived." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *see also Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) ("When the right to representation has not been waived, however, the hearing examiner's obligation to develop a full and fair record rises to a special duty").

In this case, the record shows that Mrs. Saxon validly waived her right to counsel. The Social Security Administration informed Mrs. Saxon of her right to counsel three times before the hearing: on October 25, 2010 (Tr. 37), on July 11, 2011 (Tr. 44), and on May 22, 2012 (Tr. 28-30). On two of these occasions, the Administration also informed Mrs. Saxon that the local Social Security office could provide her a list of legal referral and service organizations that could help her find representation (Tr. 37, 44). At the beginning of the hearing, the ALJ noted that Mr. Saxon was proceeding without an attorney and asked him "are you familiar with what an attorney would do for you in a case such as this?" (Tr. 179). When Mr. Saxon expressed uncertainty, the ALJ then informed him that a lawyer could assist in presenting his case and developing the evidence, and then explained a typical continency fee arrangement. (Tr. 180). Mr. Saxon then responded that he was "comfortable" proceeding without an attorney. (*Id.*). He later hired an attorney to represent Mrs. Saxon for her request to the AC for review and this present appeal, which suggests that he could have chosen to hire a representative prior to his hearing.

8

Since the right to counsel was validly waived at the hearing, the ALJ had only an ordinary duty to develop the record.

Mrs. Saxon alleges six specific failures by the ALJ to develop the record. (Doc. 8 at 9-16). These allegations will be considered in turn.

1.      Prior Claim For Benefits

Mrs. Saxon first alleges that the ALJ should have obtained her prior claim for disability. (Doc. 8 at 10-11). Mrs. Saxon was previously found eligible for benefits with an onset date of May 26, 1992, but her disability was terminated in May 1, 2001, for reasons that are not made clear in the record. (Tr. 179). Mr. Saxon testified before the ALJ that he has been unable to find any records related to that previous period of disability. (Tr. 185). Toward the end of the hearing, the ALJ said that he would "obtain the prior file" and medical records from the Northeast Alabama Medical Center and "see what those things together can give us in terms of relating these problems back that far," that is, back to the date last insured (June 30, 2006). (Tr. 197). Shortly thereafter, the ALJ told Mr. Saxon, "We'll see what happens once we get our hands on that – on the prior filing, and these most recent records from the hospital." (Tr. 197). However, the ALJ's final written decision does not discuss the prior filing, nor otherwise suggest that he ever obtained and reviewed it.

It is important to note at the outset that this action does not challenge the

9

Administration's <u>termination</u> of Mrs. Saxon's earlier period of disability benefits. (Tr.

179). Rather, it alleges a <u>new period</u> of disability beginning on May 1, 2001. (Tr. 52,

59). Therefore, the prior claim is material to this case only if contains information

relevant to her condition on or after May 1, 2001, the onset date alleged in <u>this</u> claim.

It is also important to note that the mere fact that the ALJ stated an intention to obtain

the prior claim but never did so is not a sufficient ground to reverse his decision.

Rather, "there must be a showing of prejudice before it is found that the claimant's

right to due process has been violated to such a degree that the case must be

remanded." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). "The court

should be guided by whether the record reveals evidentiary gaps which result in

unfairness or clear prejudice." *Id*.

   In this case, the court does not see any evidentiary gaps that would have been

cured by consideration of the prior records. Mr. Saxon stated at the hearing that Mrs.

Saxon made the prior application in 1992, the same year that the period of disability

began (Tr. 185, 187). Since the alleged onset date in this case was in 2001, this means

that nine years elapsed between the information in the previous file and the period of

alleged disability currently under consideration. Mrs. Saxon does not explain how the

records associated with the previous claim relate to the current alleged period of

disability; in fact, she does not even give any hint as to what the contents were. She

merely states, "Clearly the records from the year prior to 2001 are highly signficiant for this claim, as the alleged onset date is May 1, 2001." (Doc. 8 at 11). However, she has not even alleged that the previous file contains records from the year immediately prior to 2001, and the court does not know how a claim made in 1992 might have records from the year 2000. Therefore, the court finds that the ALJ's failure to obtain the previous file did not prejudice Mrs. Saxon's claim, or at least that Mrs. Saxon has not shown that it did prejudice her claim. Accordingly, she has not shown this failure is a ground to remand this case.

### 2.    Records from Dr. Epperson

The second violation of the ALJ's duty to develop the record alleged by Mrs. Saxon concerns the ALJ's failure to subpoena records from Dr. Epperson, Mrs. Saxon's treating neurologist between 2001 and 2006. (Tr. 10-11). This argument is clearly without merit. The record shows that a request for office records was sent to Dr. Epperson by the Disability Determination Service on September 22, 2010, to which Dr. Epperson responded "Not our patient." (Tr. 86). Furthermore, at the hearing, Mr. Saxon testified that in June of 2011, he "pleaded with [Dr. Epperson] for her past records" but Dr. Epperson "claims her records are destroyed . . . because she wasn't a patient of his after so many years." (Tr. 182). There is no reason to think that a subpoena could have obtained records that had been destroyed, and so the ALJ was

not obligated to issue a subpoena.

        3.    Records from the Northeast Alabama Regional Medical Center

Mrs. Saxon also argues that the ALJ should have requested records from the Northeast Alabama Regional Medical Center. (Doc. 8 at 12). During the hearing, the ALJ said that he would obtain those records. (Tr. 194, 196, 197). However, he ultimately chose not to do so, and explained in his decision that "[the records] are from 2011 and would not relate back to prior to June 30, 2006, the date last insured. (Tr. 22). Mrs. Saxon argues that the ALJ is mistaken: "While the treatment records themselves would be dated 2011, they would undoubtedly include a history and possibly even testing to determine when the difficulties began." (Doc. 8 at 12). She cites (*id*.) case law for the proposition, "Evidence post-dating an individual's insured status may be relevant and properly considered if it bears upon the severity of the claimant's condition before the expiration of his or her insured status." *Ward v. Astrue*, No. 300-CV-1137-J-HTS, 2008 WL 1994978 at *4 (M.D. Fla. May 8, 2008).

While it is true that post-dated evidence may be relevant to an earlier period, there is still the prior issue of whether, in this case, the ALJ had the duty to obtain these particular records. The Eleventh Circuit has delineated the general responsibilities of the ALJ and the claimant with respect to obtaining medical records:

> Under 20 C.F.R. § 416.912(d), the Commissioner will "develop [the claimant's] complete medical history for at least the 12 months preceding

> the month in which [the claimant] file[s][the] application." Nevertheless, the burden is on the claimant to show that she is disabled and, therefore, she is responsible for producing evidence to support her application. 20 C.F.R. § 416.912(a); 20 C.F.R. § 416.912(c); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

*McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (unpublished).

Since the records in question concern treatment in 2011, and Mrs. Saxon filed her application in 2010, the records do not concern her " medical history for at least the 12 months preceding the month in which [the claimant] file[s][the] application." 20 C.F.R. § 416.912(d). Therefore, the ALJ did not have a specific obligation to obtain them. *See McCloud*, 166 F. App'x at 418 ("to the extent that [claimant] asserts that the ALJ erred in failing to obtain records from 1998, those records are outside the twelve months preceding the date of the application. Therefore, the ALJ was not under a duty to include them in the record."). Mrs. Saxon, on the other hand, had a general responsibility as the claimant "for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). However, there is no indication that Mrs. Saxon or anyone on her behalf made any effort to obtain these medical records. Even allowing that she did not have counsel until after the hearing, Mrs. Saxon was represented by an attorney when she filed her request for review to the AC. (Tr. 174). Her attorney submitted new medical opinions to the AC (Tr. 10-11, 175), but for whatever reason, neither she nor her counsel chose to obtain the records

from Northeast Alabama Regional Medical Center and submit them to the AC.

As to the relevance of the specific records in question, Mrs. Saxon gives neither evidence nor any real explanation to support the conclusion that these records from 2011 would contain new information relating to her period of disability, which ended five years prior, in 2006. Even assuming that the records contain a summary of her medical history that describes the period before her date last insured, it is unclear to the court what information would be disclosed by that history that was not duplicative of the testimony of Mrs. Saxon's witnesses. Mrs. Saxon's assertion that the records from Northeast Alabama Regional Medical Center "possibly even [include] testing" (doc. 8 at 12) is, on its face, mere speculation, and, as a statement by counsel without any evidentiary support, is not evidence against the Commissioner's decision. *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence"). Mrs. Saxon has also failed to give any explanation of how testing conducted in 2011 would have yielded information about her mental condition five to ten years prior (*i.e.* in the period between her alleged onset of disability and her date last insured).

Therefore, the ALJ did not violate his duty to develop the record by failing to obtain these medical records.

### 4.    Treating Physician Opinion

The fourth violation of the ALJ's duty to develop the record alleged by Mrs. Saxon concerns her treating physician, Dr. Beale. Mrs. Saxon argues that "the ALJ should have contacted the treating physician, Dr. Beale, for his opinion regarding Mrs. Saxon's functioning." (Doc. 8 at 13). She notes that the evidence contains two opinions from Dr. Beale, dated August 16, 2012, and November 16, 2013, and contends that the ALJ erred by not contacting Dr. Beale to obtain an opinion statement. (*Id*. at 14).

Mrs. Saxon cites to portions of the Social Security Regulations. (*Id.* at 13). The first section, "How we consider evidence," states, in relevant parts,

> (c) <u>If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency</u>. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (c)(1) through (c)(4) of this section. <u>We might not take all of the actions listed below</u>. We will consider any additional evidence we receive together with the evidence we already have.
>
> > (1) We may recontact your treating physician, psychologist, or other medical source. <u>We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence</u>. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;
> >
> > (2) We may request additional existing records (see § 416.912).

20 C.F.R. § 416.920b[5] (emphasis added). The second section cited by Mrs. Saxon, states, similarly, that, when the evidence is inadequate to determine disability, the Social Security Administration will contact the treating physician for additional information. (*See* Doc. 8 at 13).

However, both of these sections of the Regulations concern situations where the evidence is inadequate or inconsistent. *See also Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("According to Social Security regulations, an ALJ should recontact a claimant's treating physician if the evidence in the record is otherwise inadequate to determine whether the claimant is disabled."). The fact that, after the ALJ's decision, Dr. Beale submitted opinions has no bearing on whether the ALJ was underline(obligated) to contact Dr. Beale before making findings; such obligation would arise only if the record was inadequate or inconsistent. Mrs. Saxon does not claim any specific inadequacy or inconsistency in the evidence, and the court's review finds that Dr. Beale's records were sufficient to support the ALJ's findings that Mrs. Saxon was not disabled.

The first record of treatment by Dr. Beale comes from July 2, 2001. (Tr. 148). Dr. Beale treated Mrs. Saxon for ear pain and cough, but found no problems related

---

[5] The citations in plaintiff's brief for this section do not correspond to the current regulations. (*See* Doc. 8 at 13). The court has used the correct citations.

to postpolio syndrome or Alzheimer's. (*Id*.). The notes specifically state that she was "alert and oriented to self, location, and time, with intact judgement and insight." (*Id*.). Dr. Beale next treated Mrs. Saxon on March 7, 2006, stating in his notes, "she has not been seen here in over five years." (Tr. 145). This treatment was for sinus congestion. (*Id*.). Dr. Beale noted that she "giggled inappropriately throughout the entire office visit" but also wrote that she was "alert and oriented to self, location, and time, with intact judgment and insight." (*Id*.). He diagnosed her with postpolio syndrome and malaise and fatigue. (*Id*.). Mrs. Saxon returned on June 16, 2006, several weeks after having a motor vehicle accident, complaining of dizziness, vertigo, and neck pain. (*Id*.). Dr. Beale gave her a thorough physical examination and again wrote, "patient was alert and oriented to self, location, and time, with intact judgment and insight." (Tr. 143).

Mrs. Saxon returned on October 23, 2006, and October 27, 2006, complaining of a rash. (Tr. 141-42). Dr. Beale found lesions on the first visit, but not on the second, and otherwise noted only normal findings, including, again, that she was "alert and oriented to self, location, and time, with intact judgment and insight." (Tr. 141-42). Mrs. Saxon did not return again until January 20, 2009, when she sought treatment for burning in her mouth and nose. (Tr. 132). Dr. Beale again noted that she was alert and oriented. (*Id*.). On April 28, 2009, Dr. Beale noted, for the first time, a decline in Mrs.

Saxon's mental status, and wrote that Mr. Saxon had been to his office the previous week to express concern that "she was becoming demented." (Tr. 130). He diagnosed her with possible dementia and mentioned a referral to the Alzheimer's clinic at UAB. (*Id.*). Dr. Beale saw her several more times before diagnosing her with Alzheimer's disease on September 24, 2009, and prescribing her Aricept, a medication to treat Alzheimer's disease. (Tr. 115-16).

In this case, then, the extensive treatment records from Dr. Beale make it clear that he first noticed Alzheimer's-related symptoms in April of 2009, at the absolute earliest, when he diagnosed her with possible dementia. Furthermore, at several times both before and after Mrs. Saxon's date last insured, Dr. Beale noted but did not prescribe any treatment for postpolio syndrome, meaning that there was no indication that postpolio syndrome rendered Mrs. Saxon disabled during the time in question. Therefore, the ALJ was not obligated to contact Dr. Beale to obtain an opinion statement[6] or any additional information

### 5.   Consultative Examination

Mrs. Saxon also contends that "the ALJ should have ordered a consultative examination to determine Mrs. Saxon's true level of functioning." (Doc. 8 at 14). The

---

[6] The court also notes that Dr. Beale submitted opinions after the ALJ's decision, and that these opinions, for reasons discussed below, Sec.VI.C, do not undermine the ALJ's findings. Therefore, even if the ALJ had erred by declining to contact Dr. Beale for his opinion, such error would be harmless.

ALJ's duty to develop the record entails an obligation to order a consultative evaluation "when the evidence as a whole is insufficient to allow [the Commissioner] to make a determination or decision on [the] claim." 20 C.F.R. § 404.1519a(b); *see also Reeves v. Heckler,* 734 F.2d 519, 522 n.1 (11th Cir. 1984) ("It is reversible error for an ALJ not to order a consultative examination <u>when such an evaluation is necessary for him to make an informed decision</u>." (emphasis added)).

Mrs. Saxon does not explain why a consultative examination was needed. Instead, she argues that the "ALJ acknowledged the usefulness of an examination" (doc. 8 at 14), when he (the ALJ) told Mr. Saxon during the hearing "one other option is to send her, if you can convince her to go, or just take her, to set her up for a consultative examination with a neuropsychologist." (Tr. 199). However, the ALJ did not explain why such a consultative examination would be necessary for his decision; rather, he merely suggested it to Mr. Saxon as a possible way to gather more evidence supporting disability. As discussed above, Dr. Beale's treatment records are sufficient evidence to support the ALJ's findings that she was not disabled, and so a consultative examination was not required.

### 6.    Medical Expert

Finally, Mrs. Saxon contends that the ALJ was obligated to hold a second hearing to take testimony from a medical expert. (Doc. 8 at 15). She states that this "is

the appropriate action to take in determining remote onset of disability." (*Id*.). Social

Security Ruling 83-20 lays out Administration policies for determining onset dates.

When determining the onset of a disability of nontraumatic origin, the ruling states:

> The medical evidence serves as the primary element in the onset determination. Reports from all medical sources (e.g., physicians, hospitals, and government agencies) which bear upon the onset date should be obtained to assist in determining when the impairment(s) became disabling.
>
> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

SSR 83-20 (S.S.A. 1983) (emphasis added). The ruling goes on to say that, when

"precise evidence" is not available, and "onset must be inferred," the ALJ "should call

on the services of a medical advisor." *Id*.

In this case, the medical record was adequate for the ALJ to determine an onset

date well after Mrs. Saxon's date last insured. As discussed *supra*, Sec. VI.A.4, Dr.

Beale's records show no indications of Alzheimer's until April of 2009, at the earliest.

His notes from January of 2009, as well as the records from 2006 and earlier, reveal

none of the mental deterioration, mood changes, or other symptoms associated with

Alzheimer's. Therefore, the ALJ reached his findings without making any inference

that would have required the help of a medical expert.[7]

## B.   The ALJ Did Not Commit Reversible Error In His Consideration of the CT Scan

Mrs. Saxon next argues that the ALJ "erred in failing to recognize the significance of the CT of the head performed on June 16, 2006, which showed evidence of bilateral lacunar infarctions. The ALJ incorrectly stated the CT was normal." (Doc. 8 at 17). Mrs. Saxon cites medical authority that states, "Damage to the basal ganglia cells may cause problems with one's ability to control speech, movement, and posture, and there may be problems with memory and other processes." (*Id.*).

In his decision, the ALJ wrote, "The claimant underwent x-rays and a CT scan of the head, all of which were normal." (Tr. 26). Mrs. Saxon underwent this CT scan at Clay County Hospital following her reports of dizziness to Dr. Beale on June 16, 2006, before her date last insured. (Tr. 136). Radiologist Dr. Thaddeus Coleman

---

[7] Mrs. Saxon also compares this case to *Washington v. Astrue*, 558 F. Supp. 2d 1287 (N.D. Ga. 2008). (Doc. 8 at 16). However, the cases are inapposite. In *Washington*, the ALJ stated he needed to get an additional set of medical records "because the way [claimant's] file currently looks is I've got all these speculations about what may be wrong with [claimant], but nobody really knows." 558 F. Supp. 2d at 1299. He then stated, "we will continue [the hearing]." *Id.* However, he never obtained those records or continued the hearing before issuing his decision, and so the district court held that the ALJ had failed to fully develop the record. *Id.* at 1298-99. In this case, on the other hand, although the ALJ stated an intention to seek some additional medical records during the hearing, he later gave an adequate explanation of his decision not to do so. Also unlike *Washington*, in this case the ALJ never promised to continue the hearing. Therefore, the cases are readily distinguishable.

reviewed the scan and noted:

> There is a chronic-appearing lacunar infarction seen in the right basal ganglia. Small region of decreased density in the left caudate, probably chronic lacunar infarction. The centricles, sulci, and cisterns are within normal limits. No intracranial hemorrhage, mass, or mass effect. The visualized sinuses are unremarkable. Orbits appear within normal limits.

(Tr. 136).

The ALJ's discussion is, indeed, somewhat incomplete; although most of the CT scan results were normal, the radiologist did note areas of lacunar infarction. However, to the extent that the ALJ erred by failing to describe the lacunar infarctions, the error was harmless. Merely demonstrating that Mrs. Saxon had a brain abnormality during the period she was insured is not enough to reverse the ALJ's findings; there must be evidence that during that period she had a severe impairment, *i.e.* an impairment (or combination of impairments) that significantly limited her ability to perform basic work-related activities. 20 C.F.R. § 404.1505(c). Here, there is substantial evidence that she did not have a severe impairment during that time period.

The medical authority cited by Mrs. Saxon states that damage to the basal ganglia "may cause problems with one's ability to control speech, movement, and

posture, and there may be problems with memory and other processes."[8] However, as previously discussed, Mrs. Saxon's treating physician, Dr. Beale, did not notice any of these problems during the period she was insured or even as late as January of 2009, over two years after her date last insured. (Tr. 132). Nor are there any other records from that period suggesting the presence of any of these problems. It is not until April of 2009 that Mr. Saxon expressed concerns about possible dementia and Dr. Beale first noted a decline in her mental status. (Tr. 130). Therefore, any error by the ALJ in considering the CT scan was harmless.

### C.    The Appeals Council Did Not Err In Declining Review

Following the ALJ's decision, Mrs. Saxon submitted additional evidence to the AC to further support her claim. The AC denied her request for review. (Tr. 4-7). Mrs. Saxon argues that, based upon the evidence she submitted, the Appeals Council should have remanded her claim to an ALJ for a new decision. (Doc. 8 at 17).

Generally, a claimant may present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). The AC has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b) (2012).

---

[8] National Institutes of Health, "Basal ganglia dysfunction" http://www.nlm.nih.gov./medlineplus/ency/article/001069.htm. Cited by Pl.'s brief (Doc. 8 at 17).

However, the AC must consider evidence that is (1) new, (2) material, and (3) chronologically relevant. *Ingram*, 496 F.3d at 1261 (citing 20 C.F.R. § 404.970(b)). The new evidence is material if "it is relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (citations omitted). It is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). If these conditions are satisfied, the AC must then review the case to see whether the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id.*

In reviewing the Commissioner's decision to deny benefits, this court must evaluate any evidence first submitted to the AC. *Ingram*, 496 F.3d at 1257. The new evidence need not satisfy the requirements for a remand under sentence six of 42 U.S.C. § 405(g). *Id.* at 1262. That is, Mrs. Saxon need not show good cause for her failure to present the evidence to the ALJ. *See id.* Rather, "when a claimant [has] properly present[ed] new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Id.*

The AC considered two additional pieces of evidence submitted by Mrs. Saxon. The first was a letter from Dr. Beale, dated August 16, 2012, which read, in full,

TO WHOM IT MAY CONCERN,

24

> Glinda Saxon has been under my care since 1987. She has Post Polio
> Syndrome, Atypical Psychosis, and Alzheimer's Disease. She has
> become progressively demented. In my opinion she has been totally and
> permanently disable[d] since 2001.

(Tr. 175). This letter was submitted to the AC as additional evidence when Mrs. Saxon

requested review of the ALJ's decision on August 23, 2012. (Tr. 8, 15). The second

is a Medical Source Statement ("MSS") from Dr. Beale that was dated November 16,

2013. (Tr. 10-11). The MSS was a questionnaire that asked Dr. Beale to rate Mrs.

Saxon on various categories related to her health and physical abilities. (*Id.*).

The AC denied Mrs. Saxon's request for review. (Tr. 4-7). The AC wrote that

it had considered the "additional evidence listed on the enclosed Order" but found that

"the information does not provide a basis for changing the [ALJ's] decision." (Tr. 4-

5). Discussing the MSS, the AC wrote, "The [ALJ] decided your case through June

29, 2012. This new information is about a later time. Therefore, it does not affect the

decision about whether you were disabled beginning on or before June 29, 2012." (Tr.

5).

In her brief, Mrs. Saxon seems to misunderstand the basis of the AC's

reasoning, apparently assuming that there were only one document that had been

submitted and considered by the AC. (Doc. 8 at 17-19). In fact, there were two

documents from Dr. Beale that the AC addressed. The first was the letter dated August

16, 2012, about which the AC said "the information does not provide a basis for

25

changing the AC's decision." (Tr. 4-5). The second document was the November 21, 2013 MSS, about which the AC wrote "This new information is about a later time . . ." (Tr. 5). The AC was correct in both determinations.

The letter from 2012 was properly determined not to provide a basis for changing the ALJ's decision, as it is not material. First, the letter does not constitute a "medical opinion" under the Regulations because it simply gives the doctor's opinion on Mrs. Saxon's disability. 20 C.F.R. § 404.1527(d) (stating, "Opinions on some issues, such as the examples that follow, are not medical opinions," followed by "Opinions that you are disabled"). Second, the opinion was purely conclusory; it did not contain or even refer to any evidence to support the conclusion that Mrs. Saxon "has been totally and permanently disable[d] since 2001." (Tr. 175). The Eleventh Circuit has held, "a treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'" *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583–84 (11th Cir.1991)). The Eleventh Circuit has also applied this rule to evidence submitted to the AC. *See, e.g., Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 871 (11th Cir. 2012) (unpublished) ("the additional opinions submitted by [claimant's] treating physician after the ALJ had rendered its decision do not render the ALJ's findings erroneous because the opinions were wholly

26

conclusory and unaccompanied by any objective medical evidence.")

As to the November 16, 2013 MSS from Dr. Beale, this document appears, on its face, to be a current assessment of the claimant's condition. (Tr. 10-11). It uses the present tense in each section, e.g., "the patient suffers from pain that is . . ." and "this patient has the following limitations and abilities." (Tr. 10) (emphasis added). The comments section says only "This lady is severely impaired!" (Tr. 11) (emphasis added). There is no other indication that it was meant to be a description of Mrs. Saxon's condition before her eligibility expired, more than seven years prior. Therefore, it fails to be chronologically relevant, as required by law. *See Ingram*, 496 F.3d at 1261.

Even under the unwarranted assumption that Dr. Beale meant the MSS to refer to the period before Mrs. Saxon's insured status expired, it — along with the August 2012 letter — faces the additional problem that it is inconsistent with Dr. Beale's medical records and the other medical evidence, as discussed *supra*, Sec. VI.A.4. Therefore, the AC acted properly in denying Mrs. Saxon's request for review.

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and applied the proper legal standards. Therefore, the decision is due to be, and hereby is, **AFFIRMED**. A separate final judgment will be entered.

**DONE** and **ORDERED** this the 20th day of August, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge